NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

UNITED STATES of AMERICA,

v.

AESHA RIVERS,

Defendant.

Cr. No. 17-23

**OPINION**

THOMPSON, U.S.D.J. [1]

## INTRODUCTION

This matter comes before the Court on the Motion by Defendant Aesha to suppress statements she made to federal agents after her arrest. (ECF No. 54) The United States of America (the "Government") opposes. (ECF No. 55.) The Court has decided the Motion on the written submissions of the parties and after an evidentiary hearing conducted March 1, 2019. For the reasons stated below, Defendant's Motion is denied.

## BACKGROUND

Defendant has a Bachelor's Degree in Political Science and had an extensive career in the National Guard. She served in the National Guard for approximately twenty years, eventually attaining the rank of Major.

On June 12, 2017 around 7:00 AM, a group of about eight agents—all male except for Special Agent Gina Galle—executed a warrant for Defendant's arrest at her house. Six agents

---

[1] The Honorable Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

were stationed at the front of the house, all with guns drawn and held around the hip level. According to Agent Galle, a female, the Agents were positioned so that only one would have been visible to Defendant when she opened the door.

Defendant, a female, was in the shower and therefore did not answer the door for around three minutes. When Defendant opened the door, she was wearing only a towel or bathrobe. Agent Galle went inside to help Defendant get dressed, and Defendant dressed in front of Agent Galle. After she was dressed, she was arrested and handcuffed. Agent Galle and Special Agent Chris McGrath drove Defendant to the Homeland Security Investigations ("HSI") station, about a ten-minute trip. Upon arrival at the station, Defendant's handcuffs were removed, she was processed, and she was asked if she needed to eat or use the restroom.

Twenty to thirty minutes after arriving at the station, Defendant was brought into a break room that was roughly 8-by-10 feet. Defendant, Agent Galle, and Agent McGraff sat around a table. (Video, Ex. 3.) Agent McGraff read Defendant a "Statement of Rights" containing standard *Miranda* warnings. (Video 0:17–55; *see also* Waiver, Ex. 2.) Agent McGraff then asked, "Do you understand your rights?" to which Defendant replied "yes" and nodded. (Video 0:55–58.) He then asked, "Do you wish to talk to us today?" and Defendant again said "yes" and nodded. (*Id.* 0:58–1:01.) Agent McGraff showed Defendant a form that included the Statement of Rights and a Waiver that read, "I have had the above statement of my rights read and explained to me and I fully understand these rights. I waive them freely and voluntarily, without threat or intimidation and without any promise of reward or immunity." (Waiver.) Agent McGraff told Defendant to "read the waiver and fill in the blanks." (Video 1:02–15.) He then asked if she had any questions (*Id.* 1:16–18.) Defendant asked, "I have to read?" (*Id.* 1:18–19.) Agent Galle then showed Defendant where to fill in the blank spaces on the form. (*Id.* 1:20–23.)

Defendant could be observed reading the form containing the Statement of Rights and the Waiver. (*Id.* 1:24–2:17.) She read this form for approximately nine seconds[2] before filling out and signing the Waiver. (*Id.*; Waiver.) Defendants Andrews and Galle signed as witnesses. (Waiver.) Defendant then answered the Agents' questions for about ten minutes.

On February 8, 2019, Defendant filed a Motion to Suppress the statements she made, arguing that her *Miranda* waiver was invalid and that the statements she made were involuntary. (ECF No. 54.) The Government opposed the Motion on February 12, 2019. (ECF No. 55.) The Court held an evidentiary hearing on this matter on March 1, 2019.

## **DISCUSSION**

Defendant's waiver of her *Miranda* rights was satisfactory. A waiver of one's *Miranda* rights must be made "knowingly, intelligently, and voluntarily." *U.S. v. Pruden*, 398 F.3d 241, 246 (3d Cir. 2005) (citing *Miranda v. Arizona*, 348 U.S. 436, 444 (1966)). The Court must consider both (1) whether the waiver was a free choice rather than the product of intimidation, coercion or deception, and (2) whether it was made with full awareness of the right waived and the consequences of waiver. *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Here, both factors are met. Defendant made a choice to waive her rights, and there is no evidence that anyone threatened her, lied to her, or otherwise coerced that waiver. And she waived her rights after they were explained to her orally and presented to her in writing, after she had a chance to ask questions, and after she was observed on video reading a form containing her rights. It is true that Defendant may have been rattled by the arrival of several federal agents at her house as she was showering, and she appeared nervous while her rights were explained to her, but these

---

[2] This is enough time to read the Waiver at a rate of 253 words per minute, an average speed. *See* Ronald P. Carver, *Word Length, Prose Difficulty, and Reading Rate*, 8(2) J. Reading Behav. 193, 199 (1976) (finding the average reading speed to be 248–62 words per minute).

circumstances do not raise to the level of coercion. *See Moran*, 475 U.S. at 421 ("[T]he record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements.").

Defendant's statements to the Agents were also voluntary. A statement that is not "the product of a rational intellect and a free will" violates the Due Process Clause. *Mincey v. Arizona*, 437 U.S. 385, 398 (1978) (quoting *Townsend v. Sain*, 372 U.S. 293, 307 (1963)). Here, however, no evidence suggests that Defendant's intellect was significantly diminished, that her will was overcome, or that the statements she made were anything less than voluntary. To the contrary, Defendant has attained a college education and attained a significant rank in the National Guard, and she appears to have spoken to Agents Galle and McGraff after making the thoughtful and deliberate choice to do so.

## **CONCLUSION**

For the reasons stated herein, Defendant's Motion to Suppress is denied. An appropriate order will follow.

Date:   3/7/19                                              */s/ Anne E. Thompson*
                                                            ANNE E. THOMPSON, U.S.D.J.